# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO.: 3:05CV130-MU

| | |
|---|---|
| **MEINEKE CAR CARE CENTERS, INC.,** | ) |
| **Plaintiff,** | ) |
| v. | ) **ORDER** |
| **WILLIAM R. WARD,** | ) |
| **Defendant.** | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for a Preliminary Injunction and Memorandum in Support, both filed March 23, 2005. Defendant did not file a Response to Plaintiff's Motion and this matter is now ripe for disposition by the Court.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 24, 2001, Defendant William R. Ward ("Defendant" or "Ward") became a franchisee of Plaintiff Meineke Car Care Centers, Inc. ("Plaintiff" or "Meineke") by executing a Meineke Franchise and Trademark Agreement (the "Agreement") to operate Meineke Shop Number 1622, which is located at 13811 East Hwy. 40, Independence, Missouri, 64055 (the "Shop"). (Compl. ¶ 20). By signing the Agreement, Defendant acquired the right to use the Meineke name and marks and received from Meineke proprietary information and know-how. (Compl. ¶ 21). In exchange, Defendant agreed to: (1) submit to Meineke accurate weekly statements of the Shop's gross revenues; (2) pay Meineke a weekly franchise fee, or royalty, equal to seven percent, five percent, four percent, or three percent of the Shop's gross revenue based on the type of product or service sold; and (3) pay Meineke a weekly advertising

1

contribution equal to eight percent of the Shop's gross revenues. (*Id.* ¶ 22).

Additionally, by signing the Agreement, Defendant agreed that for a period of one (1) year after leaving Meineke, he would not directly or indirectly own a legal or beneficial interest in, manage, operate or consult with: (a) any business operating at the premises of the Shop or within a radius of six miles from the Shop that repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a six mile radius of any Meineke shop existing as of the date the Agreement terminated, which business repairs or replaces system components, brake system components, or shocks and struts. (*Id.* ¶ 30).

During the term of the Agreement, Defendant breached the contract by failing to submit to Meineke accurate weekly business reports of the Shop's gross revenues and by failing to pay Meineke all of the franchise fees and advertising contributions as required by the Agreement. (Compl. ¶ 23). Consequently, on August 26, 2004, Meineke sent Defendant a Notice of Default, advising him that if he did not cure his default within ninety days, Meineke could terminate his franchise license. (*Id.* ¶ 24). Despite this notice, Defendant did not cure his default. (*Id.* ¶ 25). Therefore, on December 21, 2004, Meineke sent Defendant a Notice of Termination (the "Notice"), terminating Defendant's license to operate the Shop, effective December 24, 2004. (*Id.* ¶ 26). As of the date of the termination, Defendant had failed to pay $4,680.62 in franchise fees and $7,743.86 in advertising contributions. (*Id.* ¶ 27). The Notice also demanded that Defendant comply with the post-termination covenants in the Agreement, which included: (1) discontinuing the use of the Meineke marks; and (2) cease offering the same products and services within six miles of the Shop for a period of one year following the date of termination.

(*Id.* ¶¶ 29, 30).

Despite the termination of his license, Defendant continues to operate a competing automotive repair business located at the same address as the Shop. (*Id.* ¶ 32). Moreover, Defendant has failed to remove or cease using all materials featuring the Meineke name and logo, including the sign located at the Shop. (*Id.* Exh. 3). Defendant's employees continue to wear uniforms with the Meineke name, the Shop continues to offer Meineke literature, and the Shop is using receipts bearing the Meineke name. (*Id.* Exhs. 3-5). Consequently, Meineke asks the Court to enter a Preliminary Injunction, enjoining Defendant from continuing to infringe on Meineke's trademarks and enjoining him from breaching the terms of the Agreement.

## II. DISCUSSION

The "balance of hardships" test is used to determine the propriety of preliminary injunctive relief. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). This test weighs the following four factors: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest. *Id.* Further, the plaintiff bears the burden of establishing that each of the four elements supports granting the injunction. *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1992).

### A.    Irreparable Harm to Meineke in the Absence of a Preliminary Injunction

The question of irreparable harm to the plaintiff is the first factor to be considered in a motion for preliminary injunction. *Id.* If a plaintiff cannot establish that irreparable harm is likely to occur in the absence of a preliminary injunction, that failure alone is sufficient to deny

injunctive relief. *Manning v. Hunt*, 119 F.3d 254, 266 (4th Cir. 1997). "Moreover, the required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'" *Direx*, 952 F.2d at 812 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2nd Cir. 1989)). However, as the balance tips in favor of finding irreparable harm to plaintiff, there is a lesser need for plaintiff to establish likelihood of success on the merits. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

In the instant case, Meineke has established that it will suffer actual, imminent, and irreparable harm if the Court does not enter the requested preliminary injunction. With regard to Defendant's continuing infringement of Meineke's trademarks, if Defendant continues his unauthorized use of the Meineke name and marks, consumers may be deceived into believing Defendant is operating a legitimate Meineke business. Consequently, any defective work performed by Defendant could result in customer complaints to Meineke. In fact, Meineke has already received two such complaints. (Compl. Exh. 4). If such customer complaints continue, Meineke and its franchisees will suffer irreparable harm in the form of the loss of customers and the corresponding loss of sales. *See Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509-10 (7th Cir. 1994) (stating that the "irreparable harm is that [franchisor] will lose sales and the opportunity to maintain and develop relationships with existing and potential customers").

Moreover, allowing Defendant to operate a competing business in violation of the covenant not to compete allows Defendant to compete unfairly with Meineke and causes irreparable harm. Such competition may deprive Meineke of the customers and market it has established over the course of the franchise relationship with Defendant and would make it difficult for Meineke to re-establish an authorized Meineke franchise in the area. Additionally,

allowing Defendant to ignore the Agreement gives him a unfair competitive advantage over legitimate Meineke franchisees in the area because he is able to offer his services for a lower price than the franchisees since he does not have to pay Meineke's royalty or advertising contributions.

In sum, if the Court does not enter a preliminary injunction, Defendant's infringement on Meineke's trademarks and his breach of the covenant not to compete will result in irreparable harm to Meineke.

**B.      Likelihood of Harm to Defendant if Preliminary Injunction is Granted**

The Court finds that if Defendant is permitted to continue to infringe on Meineke's trademarks and violate the covenant not to compete, the harm to Meineke certainly outweighs any harm to Defendant. In fact, any harm that Defendant may suffer would be a result of his own conduct in failing to pay his royalty fees and advertising contributions. Such harm does not justify allowing Defendant to continue infringing on Meineke's trademarks or violating the covenant not to compete. *See S&R Corp. v. Jiffy Lube International, Inc.*, 968 F.2d 371, 379 (3rd Cir. 1992) (noting that "self-inflicted harm is far outweighed by the immeasurable damage done [to the franchisor] by the infringement of its trademark"). Therefore, the likelihood of harm to Meineke if the injunction is not granted significantly outweighs any possible harm to Defendant resulting from the imposition of the injunction.

**C.      Meineke's Likelihood of Success on the Merits of its Claims**

Since the Court finds that Meineke would suffer irreparable harm in the absence of a preliminary injunction, the Court will not discuss in detail whether Meineke has a likelihood of success on the merits of its claims. The Court notes, however, that Meineke has established a

*prima facie* case for both its trademark infringement claim and the covenant not to compete claim. At this juncture, Defendant has not provided any contrary evidence.

**D.     Public Interest**

The Court further finds that the public interest is served by the issuance of the requested injunction.

In conclusion, the Court finds that the entry of a preliminary injunction is necessary to protect Meineke from irreparable harm. Such harm to Meineke significantly outweighs any harm that Defendant may incur as a result of the entry of the injunction.

**E.     Rule 65(c) of the Federal Rules of Civil Procedure**

The Federal Rules of Civil Procedure state that "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). As noted in Rule 65, the amount of bond is within the discretion of the Court. *Maryland Dept. of Human Resources v. U.S. Dept. of Agriculture*, 976 F.2d 1462, 1483 (4th Cir. 1992). The Court here finds that a bond of $100 is sufficient to cover Defendant's costs or damages should it later be determined that Defendant was wrongfully enjoined.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction is hereby **GRANTED**. Pending a trial on the merits, <u>Defendant is hereby ordered to</u>:

(1) Cease and refrain for a period of one year from the date he begins compliance with the covenant not to compete, from directly or indirectly (such as through corporations or other entities owned or controlled by him), owning a legal or beneficial interest in, managing,

operating or consulting with: (a) any business operating at the premises of former Shop No. 1622 located at 13811 East Hwy. 40, Independence, Missouri 64055, or within a radius of six miles of the premises of former Shop No. 1622 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six miles of any Meineke shop existing as of the date Defendant's Franchise Agreement terminated, which business repairs or replaces exhaust system components, brake system components, or shocks and struts;

(2) Cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, or marks, or which contain a name, logo, or mark confusingly similar to the Meineke name, logo, or marks including, but not limited to, the black and yellow Meineke signage that lists Meineke's services and the Meineke signs, the Meineke name on employees' uniforms, the Meineke name and logo on Meineke receipts, and the Meineke name on credit card receipts;

(3) Cease making any representation or statement that Defendant or the business located at former Shop No. 1622 located at 13811 East Hwy. 40, Independence, Missouri 64055, is in any way approved, endorsed or licensed by Meineke, or is identified with Meineke in any way; and

(4) Return to Meineke all signs, forms, manuals, supplies, computer software, products, merchandise and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Meineke.

**IT IS FURTHER ORDERED** that Meineke shall post a bond of $100.00.

**Signed: May 16, 2005**

Graham C. Mullen
Chief United States District Judge